[Cite as *In re K.L.*, 2012-Ohio-5876.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| K.L. (DOB 02/10/01) | Hon. W. Scott Gwin, J.<br>Hon. Sheila G. Farmer, J. |
| D.M. (DOB 12/28/04) | |
| | Case No. 2012CA00156 |
| MINOR CHILDREN | |
| | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Family Court Division, Case No. 2010JCV00471 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT: | December 10, 2012 |


APPEARANCES:

| For Appellant | For Appellee |
|---|---|
| AMANDA E. JAMES | LISA A. LOUY |
| 200 West Tuscarawas Street | 221 Third Street, SE |
| Suite 200 | Canton, OH  44702 |
| Canton, OH  44702 | |

*Farmer, J.*

{¶1} On May 5, 2010, appellee, the Stark County Department of Job and Family Services, filed a complaint for temporary custody of K.L. born February 10, 2001 and D.M. born December 28, 2004, alleging the children to be dependent, neglected, and abused. Mother of the children is appellant, Latunya Murphy; fathers of the children are either deceased or unknown and are not parties to this appeal.

{¶2} On July 22, 2010, appellant stipulated to a finding of dependency, and the trial court granted appellee temporary custody.

{¶3} On April 4, 2012, appellee filed a motion for permanent custody. A hearing was held on July 10, 2012. By judgment entry filed July 23, 2012, the trial court granted permanent custody of the children to appellee. Findings of fact and conclusions of law were filed same date.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶5} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶6} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES

(SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## I, II

{¶7} Appellant claims the trial court's decision to grant permanent custody of the children to appellee was against the manifest weight weight of the evidence. Specifically, appellant claims the trial court erred in finding the children could not be placed with her within a reasonable period of time and the best interests of the children were best served by granting appellee permanent custody instead of placing the children with their adult sibling, Tamika Hollien. We disagree.

{¶8} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. No. CA-5758, (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279 (1978).

{¶9} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:

{¶10} (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶11} (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶12} (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child

when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

{¶13} (10) The parent has abandoned the child.

{¶14} (16) Any other factor the court considers relevant.

{¶15} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* at 477.

{¶16} R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:

{¶17} (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶18} (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶19} (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period***;

{¶20} (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶21} (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶22} In its findings filed July 23, 2012 as to whether the children could be placed with appellant within a reasonable time, the trial court found the following relevant to appellant:

{¶23} 4. As noted, this current case was opened on May 5, 2010. [K.] and [D.] have been in the custody of the agency since that time. This is a period in excess of 12 months of a 22-month period.

{¶24} 12. Mother alleges nineteen months of sobriety but, other than some sporadic drug tests, presented no independent proof of consistent sobriety. Mother's version of her treatment history is confusing. She

engaged in sporadic outpatient treatment. She entered Deliverance House in December 2010 and left in February 2011 against advice. She had no substance abuse treatment from February 2011 until July 2011. By then she was living in Michigan. Mother entered out patient treatment on July 20, 2011, in Michigan, but was discharged in September 2011 for failure to attend. From September 2011 to June 2012 Mother was not involved in treatment. She now reports she has re-engaged. Mother states that she attends NA & AA meetings every other Friday in Michigan. Mother is currently employed in Michigan at Wendy's, and she reports she is attending school. Her housing situation is not clear. Mother states she moved to Michigan for family support. Mother believes she can care for the children and would like them returned to her in Michigan.

{¶25} The trial court then concluded the following:

{¶26} 1. THEREFORE, the Court finds that [K.] and [D.] have been in the temporary custody of the SCDJFS for 12 or more months of a consecutive 22 month period.

{¶27} 2. THEREFORE, the Court finds that, notwithstanding reasonable case planning and diligent efforts by the agency, Mother, Latunya Murphy, has failed to remedy the conditions that caused [K.] and [D.] to be placed.

{¶28} 4. THEREFORE, [K.] and [D.] cannot be placed with any parent within a reasonable time nor should they be placed with any parent.

{¶29} From our review of the record, we concur with the trial court's decision. First, it is readily apparent from the record that the children have been in appellee's continuous custody from July 2010 to April 2012. T. at 17. Under R.C. 2151.414(B)(1), this fact alone, along with a best interest finding, is sufficient to support the trial court's decision.

{¶30} Secondly, the family's caseworker, Amy Craig, opined appellant did not substantially comply with her case plan. T. at 18. Appellant took herself out of treatment at Quest (Deliverance House) and did not complete the program. *Id.* Appellant has never adequately addressed her substance abuse problem (cocaine). T. at 18-19. Ms. Craig did not have any evidence of appellant maintaining sobriety for a minimum of nine months as she has received sporadic reports after appellant moved to Michigan. T. at 19-20. By moving to Michigan without supervision and without proof of her sobriety, appellant became the "architect of her own demise." She did not have any proof of continuous drug testing. Her most recent report indicated she submitted two urine screens in a six week period of time. T. at 19. Because cocaine does not stay in the system very long, she needed to consistently drop two to three samples every week. *Id.* While in Michigan in 2011, appellant did not complete a drug program, and only attempted to enter a drug program after the permanent custody motion was filed in April of 2012. T. at 27-29.

{¶31} Aimee Thomas, Ph.D., conducted a parenting evaluation on appellant. T. at 34. Appellant was evaluated as a twenty year cocaine abuser in need of a residential treatment program, an after-care program, 12-step meetings, joint counseling with her

children, and Home Based Goodwill Parenting.    T. at 38-39.    None of these recommendations were followed.

{¶32}  Upon review, we find sufficient clear and convincing evidence to establish that the children could not be placed with appellant within a reasonable time.

{¶33}  As for best interests, the trial court found the following:

{¶34}  1. Caseworker Amy Craig testified as to best interests.  [K.] is 11 and [D.] is 7.  Both are African American girls.  There are some behavioral issues.  [D.] is easygoing whereas [K.] can be disrespectful.  Both are in good physical health.  The children have been placed in the same foster home since the case began in 2010.  This is also the same home they were placed in during the pendency of the 2007 case.  It is a foster-to-adopt home.  At one point the foster parents were not sure about adoption.  However, they have expressed a desire to adopt should permanent custody be granted.  Both [K.] and [D.] are very comfortable in the foster home.  There are other adopted and foster kids in the home. [K.] was in counseling with Gail Mager at NEOBH, but has not gone in a few months.

{¶35}  2. [K.] does not want to go with Mother or other relatives.  The agency explored multiple placement options.  Three adult siblings were considered.  One backed out.  One did not pass the home study. Tamicka Hollien, who lives in Michigan, passed the home study and became licensed.  Tamicka and [K.] began counseling with Gail Mager once a

month to help [K.] deal with her concerns about moving to Michigan. Ms. Mager also helped Tamicka understand the issues the kids would face if they were placed with her. The goal was to foster a relationship between Tamicka and the children, but, ultimately, the therapist did not recommend the children be placed in Michigan. Ms. Craig does not believe that a relationship exists between Tamicka and the girls. It is not in the children's best interest to be placed with Tamicka. The girls have been in the same foster home for almost four years and see the foster family as their own. The children are only 11 and 7, and, for a large portion of their lives, they have been with this foster family. They have opened up to foster mom and feel safe and comfortable there. The children do not feel safe with Mother or other relatives.

{¶36} 5. The Guardian ad Litem, Attorney Mary Lou Sekula testified. She was the children's original Guardian in 2007. [K.] is adamant about not living with Mother. Both girls saw some frightening things while in Mother's care. Both are concerned that, even if placed with Tamicka, they would be sent back to Mother. This is a valid concern given what happened when their sister Ronda was placed with a relative. The children have been under pressure in the past to not reveal what goes on in Mother's house. They have no real bond with Tamicka. [K.] has said she doesn't even know her. Mother has always maintained that she is clean, but that has not always been accurate. There is concerned (sic) that Mother will relapse. In twenty-year time frame, Mother has only

managed two short periods of sobriety. There is no clear evidence that Mother truly has maintained sobriety. The clean urines that Mother did submit in Michigan were widely spaced in time. The Guardian recommends Permanent Custody to SCDJFS. The benefit of permanency outweighs any harm caused by severing the parental bond.

{¶37} The trial court then concluded the following:

{¶38} 1. THEREFORE, the Court finds, despite the bond that may have developed between any parent and [K.M.] and [D.L.], the harm caused by severing the bond with the parents is outweighed by the benefits of permanency in the children's life.

{¶39} 2. THEREFORE, the Court finds [K.] and [D.] to be adoptable.

{¶40} 4. THEREFORE, the Court finds it is in the best interests of [K.] and [D.] to grant permanent custody to the SCDJFS for purposes of adoption. [K.] and [D.] deserve to be in a stable, loving environment.

{¶41} The trial court's findings are supported by the record. T. at 63-67, 72-74, 78-80. The caseworker, the therapist, and the guardian ad litem all opined appellee should be granted permanent custody. T. at 67, 74, 78.

{¶42} Upon review, we find the trial court did not err in finding the best interests of the children were best served by granting permanent custody to appellee.

{¶43} Assignments of Error I and II are denied.

{¶44} The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is hereby affirmed.

By Farmer, J.

Delaney, P.J. and

Gwin, J. concur.


s/ Sheila G. Farmer_____

s/ Patricia A. Delaney_____

s/ W. Scott Gwin_____

JUDGES


SGF/db 1126

[Cite as *In re K.L.*, 2012-Ohio-5876.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| K.L. (DOB 02/10/01) | : | JUDGMENT ENTRY |
| | : | |
| D.M. (DOB 12/28/04) | : | |
| | : | |
| MINOR CHILDREN | : | CASE NO. 2012CA00156 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is affirmed. Costs to appellant.

s/ Sheila G. Farmer_____

s/ Patricia A. Delaney_____

s/ W. Scott Gwin_____

JUDGES